IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   5:20-cr-00298-DNH |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JOHN ZOURDOS,** | ) | |
| **HELEN ZOURDOS, and** | ) | |
| **DIMITRIOS ZOURDOS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE
TESTIMONY FROM DEFENDANTS' PROPOSED EXPERT WITNESSES**

**INTRODUCTION AND BRIEF SUMMARY**

Undersigned counsel for the United States hereby moves, *in limine*, to exclude testimony from the defendants' proposed expert witnesses at the upcoming jury trial in the above-captioned case, which is scheduled to begin on November 1, 2021.

This is a straightforward tax evasion case involving the diversion of cash business receipts and income into personal accounts, and payment of employees "under the table" in cash. The ultimate question for the jury, one that is factual and within the ken of the average layperson, will be whether the defendants willfully diverted more than $2 million cash receipts by depositing it into personal accounts, spending it, saving a cash hoard, and maintaining an "off the books" payroll – and whether they willfully concealed information about those additional receipts and that additional income from the United States Treasury.

The defendants' proposed expert testimony, from an attorney-accountant and two other accountants, appears designed to divert the jury's attention from the elements of the charged offenses and the core issue in the case – the defendants' intent – and place the defendants' return

1

preparers on trial. The proposed testimony is improper and unnecessary, and will only mislead and confuse the jury. Accordingly, the defendants' proposed expert testimony should be excluded because:

1. Defendants' expert disclosures are inadequately vague and do not summarize the experts' opinions about the proffered testimony, let alone describe the bases for the experts' opinions. Defendants' inadequate disclosures therefore not only fail to provide the government the required proper notice, but fail to provide this Court the necessary information so that it can perform its important "gatekeeping" function when it comes to expert testimony. *See United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017).

2. Defendants' proposed testimony on tax law and regulations would usurp the role of the Court on questions of law. This is not a complicated tax shelter case involving or turning on ambiguous interpretations of tax law. It involves the alleged concealment of business receipts, income, and a cash payroll. In tax cases, any necessary instruction on tax law, such as the definition of income, is given by the Court. *See United States v. Fletcher*, 928 F.2d 495, 503 (2d Cir. 1991) (upholding the preclusion of expert accountant evidence about taxation rules because "explaining the tax law is generally within the purview of the court, not expert witnesses")

3. Defendants' proposed expert testimony concerning the competence of their return preparer is an improper diversion from the core issues in the case that is not probative, and will only confuse and mislead the jury. E.g., *United States v. Herman*, 997 F.3d 251, 260-61 (5th Cir. 2021) (excluding expert testimony on the errors and competence of the accountant in a cash diversion tax fraud case).

4. Any proposed "summary" testimony, which defendants have neither disclosed nor described, is the province of fact witnesses, not expert witnesses.

## FACTUAL AND PROCEDURAL OVERVIEW

On October 7, 2020, a Northern District of New York grand jury sitting in Syracuse, New York, returned an indictment charging the defendants, John, Helen, and Dimitrios Zourdos, with one count of conspiring to defraud the United States with respect to corporate and individual income taxes and payroll taxes in violation of 18 U.S.C. § 371; four counts of tax evasion with respect to the income taxes of John and Helen Zourdos in violation of 26 U.S.C. § 7201; three counts of tax evasion with respect to the income taxes of Dimitrios Zourdos in violation of 26 U.S.C. § 7201; and seven counts of aiding and assisting in the filing of false and fraudulent corporate income tax returns in violation of 26 U.S.C. § 7206(2). Dkt. No. 1. These charges stem from the defendants' joint operation of three Dippin Donuts stores owned by John and Helen Zourdos in Rome and New Hartford, New York.

The government anticipates its evidence at trial will prove, among other things, that the defendants deposited into personal bank accounts more than $1.1 million in cash receipts diverted from the donut stores, which they concealed from the IRS (and their accountants) through the filing of false individual and corporate returns that did not report these additional cash receipts.

The defendants' accountant, Vincent Gilroy, and his assistant, Heather O'Rourke, prepared personal income tax returns for all three defendants and corporate income tax returns for the three stores during the years at issue in the indictment. John and Helen Zourdos told Gilroy and O'Rourke that all of the business receipts earned by the three stores were deposited into the business bank accounts, and Gilroy and O'Rourke used the business bank statements to determine the gross sales of the donut stores and prepare tax returns. Gilroy would review the corporate tax returns with John and/or Helen prior to filing, and they confirmed to him that they were reporting all of the stores' sales. The defendants did not provide Gilroy or O'Rourke with their personal

bank account statements. Gilroy and O'Rourke are also expected to testify that they were not aware of any diversions of cash earned by the donut stores into the defendants' personal bank accounts.[1]

Two weeks ago, on October 8, 2021, the defendants, for the first time, noticed their intention to call expert witnesses at the upcoming jury trial, which has been scheduled for months. John and Helen Zourdos intend to call a lawyer and accountant named Dana Kaufman as an expert witness, and Dimitrios Zourdos intends to call accountants Peter A. Freer and James J. Trionfero as expert witnesses. The expert disclosures, which are nearly identical for all three experts, indicate that the defendants primarily intend to elicit testimony on the following topics:

- "[T]ax rules, laws, and regulations," including sections of the Internal Revenue Code dealing with gifts and loans; and

- Industry standards regarding the work of accountants and "the correctness of the services, calculations, and accountings by Vincent J. Gilroy, Jr. CPA (or those working on his behalf or at his direction)."

*See* Exs. 1 & 2.[2] In addition, the defendants intend their proffered experts to testify about "accounting summaries prepared on behalf of defendants." *See id.*

## ARGUMENT

### 1. The Defendants' Expert Disclosures are Inadequate

The defendants' proposed experts should be precluded from testifying because the defendants' expert disclosures are inadequately vague. An expert disclosure by a defendant must include "a written summary of any [expert] testimony that the defendant intends to use," which

---

[1] For a more fulsome description of the facts and procedural history of this case, the government refers to its Trial Memorandum, which is being filed contemporaneously with this Motion.

[2] As the defendants' expert disclosures were not filed through CM/ECF, the government has attached them to this motion as Exhibits 1 and 2, along with the CVs provided by defense counsel for the proffered experts.

4

"must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C).  In this case, the defendants have not disclosed any "opinions" that will be offered by their proposed experts, nor have they described the reasons for any opinions they seek to elicit from the proposed witnesses. For example, the defendants have not provided any information about which "services" or "calculations" the experts will focus on or what opinions these experts have reached regarding them.

The Second Circuit has affirmed a district court's decision to preclude expert testimony proposed by a defendant under similar circumstances, namely where the defendant's expert disclosures "did not summarize the experts' opinions about [the proffered] topics, let alone describe the bases for the experts' opinions." *See United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017), *abrogated on other grounds recognized by United States v. Chambers*, 751 F. App'x 44, 46 n.1 (2d Cir. Sept. 21, 2018) (summary order).[3] As the Second Circuit explained in *Ulbricht*, the court acts "as a gatekeeper of expert testimony," which is a function the court "cannot perform . . . without a clear articulation of what the expert's opinions are and, even more importantly, of the bases for those opinions." *Id.* at 116; *see also United States v. Kaufman*, No. 19-CR-504-LAK, 2021 WL 4084523, at *19 (S.D.N.Y. Sept. 8, 2021) (unpublished) ("[M]erely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions." (citation omitted)).

According to the Second Circuit in *Ulbricht*, "The purpose of the expert disclosure requirement is to 'minimize surprise that often results from unexpected expert testimony, reduce

---

[3] Following *Ulbricht*, the Supreme Court announced in *Carpenter v. United States*, 138 S.Ct. 2206 (2018), that the government needed a warrant to acquire electronic cell site data from third parties. This third party warrant issue is unrelated to the discussion of expert disclosures in *Ulbricht*.

the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" 858 F.3d at 114 (quoting Fed. R. Crim. P. 16, advisory committee's note to 1993 amendment). Here, the defendants' vague disclosures do not provide the government with such a fair opportunity. Without knowing what the defense experts intend to discuss with respect to the defendants' tax returns and/or the other accounting services provided by Mr. Gilroy and Ms. O'Rourke (including the keeping of QuickBooks and the issuance of financial statements), the government is not in a position to hire or prepare a rebuttal witness, potentially necessitating a delay during trial when the government is inevitably surprised by the opinions offered by the defendants' experts.

The inadequacy of the defendants' expert disclosures is a sufficient basis to exclude the proffered testimony. *See Ulbricht*, 858 F.3d at 115. Even if this Court does not preclude the experts on this basis, the government respectfully requests, at a minimum, that this Court order the defendants to provide—immediately—their experts' actual opinions and "the bases and reasons for those opinions," as required by Rule 16(b)(1)(C).

As described further below, however, there is an independent basis for precluding the defendants' proposed experts, in that their testimony would be irrelevant and improper and would confuse the jury.

**2. Expert Testimony is not Needed to Explain the Law**

This Court does not need a lawyer hired by John and Helen Zourdos, or either of the accountants hired by Dimitrios Zourdos, to explain applicable "laws, regulations," and sections of the Internal Revenue Code to the jury. It is well settled that such legal instructions are the exclusive province of the trial judge. *See United States v. Fletcher*, 928 F.2d 495, 503 (2d Cir. 1991) (upholding the preclusion of expert accountant evidence about taxation rules because "explaining

the tax law is generally within the purview of the court, not expert witnesses."); *United States v. Ingredient Tech. Corp.*, 698 F.2d 88, 97 (2d Cir. 1983) (holding that precluding expert testimony did not thwart the defense that defendants could not have formed a willful intent because "it would be very confusing to a jury to have opposing opinions of law admitted into evidence as involving a fact questions for them to decide" and reiterating that "[q]uestions of law are for the court").

This is not a complicated tax shelter case. It is straightforward tax fraud scheme involving the alleged willful concealment of sales, receipts, and income by the defendants from their tax return preparer and the United States Treasury. The case will therefore largely be decided on a simple factual question understood by the average juror: whether the defendants did, in fact, willfully divert and conceal cash receipts into personal accounts, and whether they willfully kept that information from the IRS. The case will *not* turn on what any complicated or ambiguous provisions of the tax code. As evidenced by the government's contemporaneously filed jury instructions, issues potentially raised by the evidence that involve the tax code can be addressed through jury instructions.

For example, the government is proposing the following instruction on the tax treatment of loans, if it becomes necessary, which is one of the topics about which the defendants propose to elicit expert testimony:

> Evidence was introduced during the trial about the receipt of loans to one or more of the defendants from Dippin Donuts.
>
> A loan which the parties to the loan agree is to be repaid does not constitute gross income as that term is defined by the Internal Revenue Code. However, merely denominating a transaction as a loan is not sufficient to make it a loan. Where there is no good faith intent on the part of the borrower to repay the funds advanced, such funds are income under the income tax laws and are taxable as such.

> Whether a particular transaction constitutes a loan is a question of fact to be determined by considering all of the pertinent facts in the case. In making your determination whether the parties intended a bona fide loan, you may take into consideration the following non-exclusive list of factors, no one of which is controlling: (1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the loan; and (7) whether the parties conducted themselves as if the transaction were a loan.

The above proposed instruction, most of the language of which comes directly from appellate decisions,[4] would provide a jury everything it needs to know about the tax treatment of loans to determine, as a matter of fact, whether any purported loans in this case were genuine and whether they should have been reported as income. The jury does not need an expert to testify further about what constitutes a loan, and it would invade the province of the jury for an expert to opine on whether a certain transaction constituted a loan, since that is a purely fact question for which the jury needs neither assistance nor opinion testimony.

If relevant topics covered by the Internal Revenue Code come up at trial for which the parties have not proposed jury instructions in advance, both parties will have an opportunity to propose—and this Court is equipped to draft—additional instructions that are consistent with both the relevant statutes and regulations and any applicable case law. This is one reason courts hold charge conferences with the parties prior to instructing the jury. Regardless of the facts that come

---

[4] *See Welch v. Commissioner*, 204 F.3d 1228, 1230 (9th Cir. 2000); *Frierdich v. Commissioner*, 925 F.2d 180, 182 (7th Cir. 1991); *United States v. Swallow*, 511 F.2d 514, 522 n.7 (10th Cir. 1975).

out at trial, though, expert testimony about the law is simply unnecessary and would both confuse the jury and usurp the role of this Court.

### 3. Testimony About the Defendants' Accountants is Irrelevant and Would Confuse and Mislead the Jury Away from the Elements of the Charged Offenses

The principal fact issue in this case is whether the defendants willfully hid from the IRS millions of dollars earned at the donut stores. Opinion testimony regarding whether Gilroy and O'Rourke are competent and whether they made errors as to other parts of the tax returns (or in the QuickBooks entries his firm kept for the businesses) will not assist the jury in determining the issue of willfulness. Even if, hypothetically, a tax preparer in a case like this had mistakenly computed a certain tax credit or failed to carryover a certain loss from a prior year,[5] opinion testimony by an expert witness would still be irrelevant to the central issue of the intent of the defendants. Here, the actions of Gilroy and O'Rourke do not control or inform whether the defendants acted willfully by evading taxes, defrauding the IRS, and filing false tax returns, as charged.

And defendants have not, through their experts or otherwise, highlighted alleged computational errors by their tax preparers on other parts of their tax returns that would eliminate the more than $2 million in receipts they concealed from IRS by diverting unreported cash to their personal accounts and lifestyle spending.

The situation is analogous to that faced by the Court in *United States v. Herman*. There, the government charged two restaurant owners with violating 18 U.S.C. § 371 and

---

[5] The government is not aware of any such failures by the accountants in this case.

26 U.S.C. § 7206(1) for understating gross receipts. 997 F.3d 251, 260-61 (5th Cir. 2021). The defendants wanted to call an expert witness to testify that the defendants' accountant had erred in calculating their gross receipts and business expenses. *Id*. The district court excluded the expert's testimony as both irrelevant and confusing to the jury, despite the defendant's argument that this testimony was necessary evidence of their mental state. *Id*. at 268-70. The court reasoned that the expert's re-computation of gross receipts "doesn't bear upon at all . . . the issues of whether or not the [defendants] failed to include cash receipts that the businesses have received on the appropriate returns." *Id*. The Fifth Circuit affirmed, explaining:

> [T]he unreported cash, emphasized by the Government, and the overstated gross receipts, offered by the [defendants] through [the expert witness], are not related. [The expert's] testimony would have related to errors that [the defendant's accountant] made in preparing defendants' tax returns—errors unrelated to the [defendants'] failure to fully disclose their cash receipts.

*Id.* at 270. Other courts have similarly ruled that expert testimony as to an accountant's computations and general accounting standards are not relevant to willfulness issues. *See*, *e.g.*, *United States v. Chavin*, 316 F.3d 666, 669-71 (7th Cir. 2002) (affirming the district court's exclusion of a defendant's expert, concluding that "we do not perceive how [testimony that the defendant's accountant had made mistakes] could be relevant" to the case), *superseded by regulation on other grounds as stated in United States v. Black*, 815 F.3d 1048 (7th Cir. 2015). As the Sixth Circuit has explained, "Willfulness is personal. It relates to the defendant's state of mind. . . . Unless there is a connection between the external facts and the defendant's state of mind, the evidence of the external facts is not relevant." *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986); *see also United States v. Garrity*, No. 3:15-CV-243-MPS, 2018 WL 2465354 (D. Conn. June 1, 2018) (unpublished) (granting motion to preclude expert accountant's testimony on the

10

state of public awareness of foreign bank account reporting requirements because it did not address the issue of whether the defendant acted willfully).

Even if opinion testimony about the competence of Gilroy and O'Rourke is deemed relevant, any minimal probative value would be outweighed by the risk that the jury would be confused and misled by the proffered experts into believing that the case rises or falls on the adequacy of the accounting skills of Gilroy and O'Rourke. Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Allowing opinion testimony by the proposed expert accountants risks misleading the jury into believing that the accuracy of calculations made by Gilroy and O'Rourke—including whether they met a minimum standard of care—is a dispositive issue in this case. If confused about this issue, the jury may improperly conclude that, even if the defendants did engage in fraudulent conduct as charged, the accountants' errors demand acquittal. Given this, the proposed expert testimony should be precluded under Rule 403. Cross examination is the appropriate mechanism for the defendants to question Gilroy and O'Rourke about their process for preparing returns and the information and documentation provided to them by the defendants.

In *United States v. Iskander*, the defendant was charged with tax evasion for systematically skimming cash receipts from two hotels he owned and operated, while paying no federal income tax, 407 F.3d 232, 234 (4th Cir. 2005). The defendant in that case sought to use an accounting expert to show that he had failed to use depreciation schedules to which he was entitled, thus showing that he was not as sophisticated as the government argued. *Id*. at 237. The district court precluded this expert testimony because, "to the extent that it [was] marginally relevant under Rule

11

403," the issue of depreciation schedules was a "red herring," as the probative value of the challenged evidence was "out-weighed by its potential to cause jury confusion." *Id*. at 238-39, n.4. The Fourth Circuit affirmed. *Id*. Here, too, any errors by the defendants' accountants are marginally relevant (at best), so expert testimony about minimum accounting standards and tax computations in the context of the accounting services provided by Gilroy and O'Rourke is a similar "red herring" likely to confuse and mislead the jury.

### 4. Experts are Not Needed to Provide Summary Testimony

Finally, the defendants do not need experts to testify about "accounting summaries," if they satisfy other requirements for admission of such evidence. *See* Exs. 1 & 2. As briefed by the government in its Trial Memorandum filed contemporaneously with this motion, Federal Rules of Evidence 611(a) and 1006 provide a mechanism for fact witnesses to testify about and summarize voluminous evidence, including evidence about bank accounts and financial transactions. Thus, to the extent the defendants need or desire to call witnesses to summarize certain totals from bank records, payroll data, or QuickBooks entries that are or will be admitted into evidence, these witnesses need not (and should not) testify as experts, as there is no need for an opinion about summary evidence, which is inherently fact-based.

Even if summary evidence could be the subject of expert testimony, the defendants have not provided any summaries to the government or revealed any details about what summaries have been or will be created, much less the substance of any opinions about such summaries, as required by Rule 16(b)(1)(C).

Indeed, the defendants have not even disclosed the general subject matter about which the summaries will focus. By contrast, the government has disclosed to the defendants summaries the government intends to introduce through fact witnesses in its case-in-chief, along with an

explanation of how the revenue agent will compute unreported receipts and taxes due and owing (i.e., by taking the unreported sales figures in the calendar notebooks, and cash deposits in the personal accounts, and doing simple arithmetic). As additional summaries are created the government will continue to disclose them. Without reciprocal information from the defendants, the government has no fair opportunity to prepare to counter any testimony by summary witnesses, expert or otherwise. Thus, the defendants have not even satisfied the minimum standard of providing the government a "reasonable" opportunity to examine or copy the proffered summaries. *See* Fed. R. Evid. 1006. Accordingly, the government seeks immediate disclosure of any summary evidence the defense intends to introduce even through fact witnesses.

## **CONCLUSION**

For the reasons described above, the government respectfully urges this Court to preclude the defendants' proposed experts from testifying as experts at trial and to require that any summaries prepared by them (or any other witnesses who will testify as fact witnesses) be provided immediately to the government.

Dated October 22, 2021	Respectfully submitted,

DAVID A HUBBERT
Acting Assistant Attorney General

/s/ John N. Kane, Jr.

By:	JOHN N. KANE, JR.
Assistant Chief
U.S. Department of Justice, Tax Division
Northern Criminal Enforcement Section
Bar Roll No. 515130

CARLA B. FREEDMAN
United States Attorney

/s/ Michael F. Perry

By:    MICHAEL F. PERRY
Assistant United States Attorney
Bar Roll No. 518952